# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# BRUNSWICK DIVISION

ALBERT WILLIAMS,

    Plaintiff,

v.

DR. BRUCE COX; FATHER JAMES O'NEIL; and UNKNOWN STAFF,

    Defendants.

CIVIL ACTION NO.: 2:14-cv-158

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently housed at the Federal Satellite Low Camp in Jesup, Georgia, filed a cause of action pursuant Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and the Religious Freedom Restoration Act, 42 U.S.C. §§2000bb–2000bb-4 ("RFRA").  Defendants filed a Motion for Summary Judgment, (doc. 18), and Plaintiff filed a Response, (doc. 24).  For the following reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion, **DISMISS** Plaintiff's Complaint, and **DIRECT** the Clerk of Court to **CLOSE** this case.  I also **RECOMMEND** the Court **DISMISS** without prejudice Plaintiff's claims against "Unknown Staff".  I further **RECOMMEND** that the Court **DENY** Plaintiff leave to appeal *in forma pauperis.*

## BACKGROUND[1]

Plaintiff is a member of the Hebrew Israelite community, a religious group whose members identify themselves as "authentic descendants of the ancient Isrealite (sic) people of the Bible." (Doc. 1, p. 7.)  Plaintiff contends he sent an electronic request to Defendant O'Neil on

---

[1] The recited allegations are taken from Plaintiff's Complaint and are viewed in the light most favorable to Plaintiff.

May 8, 2013, and requested a work proscription for May 19 and 20, 2013, for the celebration of Pentecost, or Feast of Shavuot. (Id. at p. 3.) Plaintiff asserts Defendant O'Neil denied his request and informed Plaintiff that he would not place May 19 and 20, 2013, as days of work proscription. Plaintiff states he then sent an electronic request to Defendant Cox on May 12, 2013, to check on the status of Defendant O'Neil's denial of Plaintiff's request for two days' work proscription. (Id.) Defendant Cox, in denying Plaintiff's request, informed Plaintiff that the dates for the Feast of Shavuot fell on May 15 and 16, 2013, according to the Jewish calendar. (Id. at p. 4.) Plaintiff contends it was recommended that he complete the "Introduction of a New or Unfamiliar Religious Components" questionnaire, which he did in July 2013. (Id.)

Plaintiff maintains that the actions of Defendants Cox and O'Neil[2] placed a substantial burden on his right to freely practice the tenets of his religious faith by: 1) denying his request to observe the Feast of Shavuot on May 19 and 20, 2013, as recognized by the Hebrew Israelite community, which is determined by the new moon; 2) forcing him to observe the Feast of Shavuot according to the Jewish calendar; and 3) failing to recognize the religious faith and practices of the Hebrew Israelite community. (Id.) As relief, Plaintiff requests that the faith and practices of the Hebrew Israelite community be recognized by the Bureau of Prisons through injunctive and declaratory relief. (Id. at p. 5.)

Plaintiff's Complaint was served on Defendants Cox and O'Neil for alleged violations of the RFRA and Plaintiff's First Amendment right to the free exercise of religion. (Doc. 7.)

---

[2] Plaintiff also claims "Unknown Staff" violated his rights in the same manner he alleges Defendants Cox and O'Neil did. However, these "Unknown Staff" members have never been identified, let alone served with a copy of Plaintiff's Complaint. Thus, the Court should **DISMISS** without prejudice Plaintiff's claims against "Unknown Staff". See Fed. R. Civ. P. 4(m).

DISCUSSION

Defendants contend that they are entitled to summary judgment in their favor. Defendants specifically contend Plaintiff's claims for injunctive and declaratory relief are moot because there no longer remains a live case or controversy between the parties. Defendants assert, even if the Court finds that a live case or controversy still exists between the parties, Plaintiff cannot show that he suffered a substantial burden to the exercise of his religious beliefs and practices. Therefore, Defendants assert, Plaintiff's claims cannot be sustained. Defendants also maintain they are entitled to qualified immunity. In support of their Motion for Summary Judgment, Defendants submitted a Statement of Material Facts, copies of the emails between Plaintiff and Chaplaincy Services, declarations by each Defendant, and copies of Plaintiff's administrative remedies. In response, Plaintiff filed a Brief with a short supporting attachment.

As set forth below, the Court agrees that no case or controversy exists between the parties and that Defendants are entitled to summary judgment in their favor.

**I.  Standard of Review**

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cty., Fla., 630 F.3d 1346, 1353 (11th Cir. 2011).

## II.     Whether a Live Case or Controversy Between the Parties Exists

Defendants assert that Plaintiff's claims rest on his allegation that he was denied work proscriptions for Shavuot in 2013, and the only relief Plaintiff has sought is declaratory and injunctive relief for recognition of the Hebrew Israelite community. (Doc. 18, p. 7.) Defendants allege Plaintiff has not set forth any claims regarding any further work proscription or other denials of accommodations to practice his faith. Defendants also allege they have accommodated Plaintiff's further requests for his observances of Shavuot and other faith requests, and accordingly, there remains no case or controversy upon which the Court can rule. (Id.) Specifically, Defendants state the holy days for which Plaintiff sought work proscription in 2013 have passed, making Plaintiff's requested relief inappropriate. In addition, Defendants

contend they have accommodated Plaintiff's work proscription and prayer period requests since June 2013 for Shavuot and other Hebrew Israelite observance periods. (Id. at p. 8.) Defendants note the evidence they have presented to the Court shows that they and the Bureau of Prisons recognize the Hebrew Israelite community at the Federal Correctional Institution in Jesup, Georgia. Defendants maintain Plaintiff cannot show, nor has he alleged, that the "capable of being repeated and evading review" exception to the mootness doctrine applies. (Id. at p. 9.) Thus, Defendants assert, the Court should grant summary judgment in their favor or dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(1) pursuant to the mootness doctrine.[3]

In response, Plaintiff states the disposition of his questionnaire for new or unfamiliar religious components remained unresolved at the time he filed his Response. (Doc. 24, p. 2.) Plaintiff contends that the ten components proffered in this questionnaire "are underpinning tenets" to his faith of choice, and it "is essential there be definitive resolution of the components contained in that document." (Id.) According to Plaintiff, this Court's review of this questionnaire will make it evident that Plaintiff will be subject to the same or similar obstructions to the free exercise of the tenets of his faith if these components are not resolved. Plaintiff points to Defendants' statements in their declarations, which Plaintiff maintains provide proof of Defendants' insufficient understanding of the differences between Judaism and Messianic/Sabbatarian sects (of which Plaintiff has been classified). (Id. at p. 3.) Plaintiff

---

[3] The Court finds that it is appropriate to use the summary judgment standard of review in reaching its recommended disposition of Defendants' Motion, as the Court has relied on the parties' supporting documentation and has reached, at least in part, the relative merits of Plaintiff's claims. "When a factual attack [i.e., an attack relying on extrinsic evidence,] . . . is made at the summary judgment stage, the Court applies Rule 56 summary judgment standards and is 'obligated to consider not only the pleadings, but to examine the record as a whole to determine whether [it is] empowered to adjudicate the matter at hand.'" Ogeechee-Canoochee Riverkeeper, Inc. v. T.C. Logging, Inc., 2009 WL 2390851, at *5 (S.D. Ga. Aug. 4, 2009) (second alteration in original) (quoting Nat'l Parks Conservation Ass'n v. Norton, 324 F.3d 1229, 1242 (11th Cir. 2003)).

alleges the resolution of these components is "the linchpin upon which clarification" rests for this Court and the parties. (Id.) He states that, if Defendants had been sufficiently apprised of his religious tenets and the differences between his faith and Judaism, the filing of his Complaint would not have been necessary. (Id. at p. 5.)

Article III of the Constitution "extends the jurisdiction of federal courts to only 'Cases' and 'Controversies.'" Strickland v. Alexander, 772 F.3d 876, 882 (11th Cir. 2014). This "case-or-controversy restriction imposes" what is "generally referred to as 'justiciability' limitations." Id. There are "three strands of justiciability doctrine—standing, ripeness, and mootness—that go to the heart of the Article III case or controversy requirement." Harrell v. The Fla. Bar, 608 F.3d 1241, 1247 (11th Cir. 2010) (internal quotation marks and alterations omitted). With regard to the mootness strand, the United States Supreme Court has made clear that "a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992) (internal citation omitted). "An issue is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." Friends of Everglades v. S. Fla. Water Mgmt. Dist., 570 F.3d 1210, 1216 (11th Cir. 2009) (internal quotation marks omitted). Questions of justiciability are not answered "simply by looking to the state of affairs at the time the suit was filed. Rather, the Supreme Court has made clear that the controversy 'must be extant at all stages of review, not merely at the time the complaint is filed.'" Christian Coal. of Fla., Inc. v. United States, 662 F.3d 1182, 1189–90 (11th Cir. 2011) (quoting Preiser v. Newkirk, 422 U.S. 395, 401 (1975)).

There are judicially-created exceptions to the mootness doctrine. Of import here is the exception to the mootness doctrine governing cases or controversies "capable of repetition yet

6

evading review." Id. at 1194. "[T]he capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality." City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983) (citing DeFunis v. Odegaard, 416 U.S. 312, 319 (1974)). The Supreme Court has made clear the exception applies only where "'(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" Christian Coalition, 662 F.3d at 1195 (emphasis supplied) (quoting Davis v. FEC, 554 U.S. 724, 735 (2008)); see also Bourgeois v. Peters, 387 F.3d 1303, 1308 (11th Cir. 2004).

Plaintiff has been categorized as a member of the Messianic/Sabbatarian religious group since March 31, 2007. (Doc. 18-3.) Defendant Cox, who was the supervisory chaplain at the Federal Correctional Institution in Jesup, Georgia, until his retirement in July 2014, declared he understood at the time Plaintiff made his work proscription request in 2013 "that the expressed religious practices of the Messianic/Sabbatarian faith community were to be accommodated in conjunction with the Jewish faith community." (Doc. 18-5, p. 4.) The Shavuot and corresponding work proscription were scheduled for May 15 and 16, 2013, yet Plaintiff sought alternative dates for a work proscription for the observance of Shavuot of May 19 and 20, 2013. (Id.; Doc. 18-6, p. 4.) Plaintiff made his request for these alternative dates on May 8, 2013. (Doc. 18-4, p. 1.) At that time, Defendants Cox and O'Neil were not aware of any evidence supporting Plaintiff's request for alternative dates, nor had Plaintiff provided any such evidence. (Doc. 18-5, p. 4; Doc. 18-6, p. 4.) Defendant Cox stated he relied on Program Statement 5360.09[4] in failing to accommodate Plaintiff's request for a work proscription for the requested

---

[4] In relevant part, this Program Statement provides: "Inmates may request the introduction of new or unfamiliar religious components into the Chaplaincy Services program. When information is required

dates absent written information establishing these dates as appropriate holy days for the tenets of his religion. (Doc. 18-5, p. 4.) In addition, Defendant Cox stated Plaintiff made his work proscription request rather late (just a week and a half prior), and permitting Plaintiff's request on such short notice "would have resulted in a disruption of the order of the facility and assignment of work duties." (Id.)

In June 2013, Plaintiff supplied "verifiable documentation supporting his request for alternative dates for observance of Shavuot." (Doc. 18-6, p. 4.) Defendant O'Neil stated that, because Plaintiff provided this information, his request for alternative work proscription dates for Shavuot was honored for 2014. (Id.; Doc. 18-4, p. 40.) In addition, Defendant O'Neil instructed Plaintiff to "continue to provide Religious Services staff with copies of his religious calendar so that similar accommodations could be made in the future." (Doc. 18-6, p. 4.) Plaintiff's alternative work proscription for the Messianic faith's observance of Shavuot was honored for the year 2015 as well. (Doc. 18-9.)

There remains no case or controversy for this Court to rule. As noted above, the only relief Plaintiff requested through this cause of action was that the faith and practices of the Hebrew Israelite community be recognized and that the adherents of this religion be allowed to practice without hindrance or interference through injunctive and declaratory relief. (Doc. 1, p. 5.) Admittedly, Plaintiff's request regarding the work proscription for Shavuot for the year 2013 was not fulfilled. However, any injunctive or declaratory relief Plaintiff seeks as to work proscriptions for those dates is now moot. See Smith v. Allen, 502 F.3d 1255, 1267 (11th Cir. 2007) (noting that injunctive relief is a prospective remedy, intended to prevent future injuries), *abrogated on other grounds by* Sossaman v. Texas, 563 U.S. 277 (2011); Wilson v.

---

regarding a specific new practice, the chaplain may ask the inmate to provide additional information which would be considered when deciding to include or exclude the practice from the Chaplaincy Services program." (Doc. 18-5, p. 14.)

Birnberg, 667 F.3d 591, 595 (5th Cir. 2012) (stating that, when requested claims for injunctive relief are "now impossible" because the time for granting that relief has passed, the claims "supporting that remedy are moot[ ]"); Echtinaw v. Lappin, No. 08-CV-3011, 2008 WL 5337831, at *2 (D. Kans. Dec. 18, 2008) (plaintiff's request regarding a ceremonial meal was mooted because the time for that ceremony had passed).

Likewise, the evidence before the Court reveals that Plaintiff's remaining claims for prospective relief—that his religion be recognized and that he and other adherents be allowed to practice without interference— are now moot. The undisputed evidence establishes that prison officials recognized the Hebrew Israelite community no later than July 2013 and perhaps as early as 2011. (See Doc. 18-4, pp. 6–7.) In fact, Plaintiff was advised in the Warden's response to his administrative remedy request that the information he provided to Religious Services "substantiates with certainty that the Messianic group celebrates Pentecost on different days than other Judaic traditions. As a result, accommodations will be granted for the Messianic group to observe Pentecost in 2014 according to the calendar that governs their religious holy days." (Doc. 18-7.) In addition, since July 2013, Plaintiff has submitted requests for the Hebrew Israelite community to participate in several holy days and attendant work proscriptions, and he presents no evidence that his requests have been denied. (Doc. 18-4, pp. 8–9, 20–22, 32–33, 44, 46, 66–67, 75, 80.) Further, prison officials have responded in a positive manner to Plaintiff's requests for chapel services and other needs of the Hebrew Israelite community. (Id. at pp. 15–19, 24–31, 40–43, 45, 47–53, 57–59, 61–63, 71–74, 81.) Thus, at this stage of litigation, there no longer is a controversy between the parties in need of this Court's resolution. Christian Coalition, 662 F.3d at 1190 ("[T]he controversy must be extant at all stages of review, not merely at the time the complaint is filed.") (internal citation and punctuation omitted).

The Court recognizes Plaintiff's assertions that Defendants have acknowledged a lack of understanding of the Messianic/Sabbatarian faith and that the trier of fact cannot reasonably conclude Defendants will comply with the needs of this faith. (Doc. 24, p. 5.) Plaintiff ostensibly argues that his claims against Defendants are not moot because his claims fit within the narrow "capable of repetition yet evading review" exception to the mootness doctrine. However, Plaintiff fails to present anything more than conclusory assertions that the alleged constitutional violations are capable of occurring in the future. Specifically, Plaintiff fails to set forth any evidence creating a genuine dispute as to a fact material to his injunctive and declaratory relief request that the complained of actions—not being able to have a work proscription for the Messianic/Sabbatarian observance of Shavuot and garnering recognition of his religion—are reasonably capable of repetition. The evidence before the Court, as recounted above, shows that Plaintiff's requests for work proscriptions for Shavuot have been honored for 2014 and 2015, his requests for work proscriptions for the observances of other holy days have been honored from 2013 through the date of the filing of Defendants' Motion, and that prison officials have recognized his faith. Moreover, Plaintiff appears to misconstrue Defendants' statements, as Defendants stated that, at the time Plaintiff made the initial request for work proscription for Shavuot in 2013, they were unaware of Plaintiff's need for different dates than those of the Jewish faith for the observance of Shavuot. (Doc. 18-5, p. 4; Doc. 18-6, p. 4.)

In sum, Plaintiff's claims are moot and should be dismissed, as there is no case or controversy before the Court. Therefore, I **RECOMMEND** that the Court **GRANT** this portion

of Defendants' Motion. Accordingly, it is unnecessary to address the remaining grounds of Defendants' Motion.[5]

## III. Leave to Appeal *In Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has, of course, not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal. See Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Or, stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

---

[5] Even if Plaintiff's claims were not moot, Defendants should be entitled to summary judgment on Plaintiff's First Amendment and RFRA claims, in the manner and for the reasons set forth in their Motion. (Doc. 18, pp. 10–16.)

Based on the above analysis of Plaintiff's action and Defendants' Motion for Summary Judgment, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** that the Court **GRANT** Defendants' Motion for Summary Judgment and **DISMISS** Plaintiff's Complaint. I also **RECOMMEND** the Court **DISMISS** without prejudice Plaintiff's claims against "Unknown Staff" and **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and to **CLOSE** this case. I further **RECOMMEND** that the Court **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United

States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.  The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 28th day of April, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA